IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>EQUIPMENT ACQUISITION RESOURCES, INC.,<br><br>　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 09-bk-39937 |
| WILLIAM A. BRANDT, JR., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc.,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>ICON EAR, LLC<br>ICON EAR II, LLC,<br><br>　　　　　　　　Defendants. | Hon. Timothy A. Barnes<br><br>Adv. No. 11-ap-02239 |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the Bankruptcy Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding to avoid and recover fraudulent conveyances arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

This matter comes before the court on the motion (the "Motion To Dismiss") of defendants, ICON EAR, LLC and ICON EAR II, LLC (together, "Defendants"), to dismiss Count VI of the amended adversary complaint (the "Complaint") filed by Plaintiff, William Brandt, Jr., in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc. ("EAR", "Debtor" or "Plaintiff"). The Complaint, as described below, seeks the recovery of approximately $6.9 million in lease payments alleged to have been fraudulently transferred from EAR to Defendants as part of a fraudulent lease scheme orchestrated by one Sheldon Player ("Player"). Defendants seek dismissal of Count VI under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted.[1]

## BACKGROUND

Unless otherwise indicated, the following facts are taken from Plaintiff's Complaint and are assumed to be true for purposes of the motion to dismiss, all reasonable inferences being drawn in Plaintiff's favor. *See, e.g., Cole v. Milwaukee Area Technical College District*, 634 F.3d 901, 903 (7th Cir. 2011).

EAR was incorporated in 1997. It was designed to operate as a refurbisher of special machinery, a manufacturer of high-end technology parts, and a process developer for the manufacture of high-technology parts. The bulk of EAR's stated revenue derived from refurbishing and selling high-tech machinery; it was set up to purchase high-tech equipment near the end of its useful life at prices that were low relative to the cost of new units, and then refurbish the equipment for sale to end-users at substantial gross margins using a propriety process.

Eventually, EAR's apparent success came to an end, because of Player's abuse of EAR. Player systematically and repeatedly caused EAR to enter into unnecessary and harmful agreements related to over-valued machinery. As part of his scheme, Player caused EAR to enter into financing and financing-type lease agreements with certain entities (the "Financial Entities") related to equipment that was allegedly owned by Machine Tools Direct, Inc. ("MTD"). However, MTD was a mere strawman in Player's scheme. Many, if not all, of the sale invoices from MTD to the Financial Entities grossly overstated the value of the underlying equipment. MTD "purchased" the equipment from EAR mere days before MTD sold the equipment to either EAR or the Financing Entity. In those instances, Player purportedly caused EAR to transfer title to the equipment to MTD, and MTD then sold that equipment to EAR (or the Financial Entity in the case of a lease) at an inflated purchase price. As a result of this scheme, Player caused EAR to lease equipment at a cost far in excess of its actual value.

---

[1] The court is aware that in a filing summarizing the arguments of the Defendants and other, similarly situated, defendants, these Defendants were noted as raising issues regarding whether the Plaintiff's claim should be dismissed under Fed. R. Civ. Pro. 12(b)(6) and 9(b) in relation to pleading fraud with particularity. However, these issues were never raised in the Defendants' Motion To Dismiss, nor did these Defendants argue these issues at the July 10, 2012 hearing. As such, despite the contents of the summary, Defendants have not put these issues before the court. As a result, the court herein addresses the issues actually raised by the Defendants in the Motion To Dismiss – (i) the allegation that the imposition of a constructive trust is not a cause of action, and (ii) the allegation that the doctrine of *in pari delicto* bars a claim against Defendants.

EAR did not benefit from these circular transfers, as EAR paid far more for the equipment under the financing or lease agreements than it ever received via the sale to MTD. Moreover, Player's defalcations further prevented EAR from having the funds necessary to repay the related financing or lease obligations, thus requiring EAR to enter into an increasing number of these transactions in order to have sufficient funds to repay its current obligations.

Plaintiff contends that "[i]n effect, Player's misconduct amounted to a Ponzi-scheme where funds from later Financing Entities were used to repay EAR's obligations under earlier financing and lease obligations." Complaint, at ¶ 15.

In 2009, after receiving numerous notices of default from its creditors, EAR sought the assistance of outside counsel and turn-around specialists in order to assist in the company's rehabilitation. After some investigation, EAR's outside counsel and consultants discovered what they believed to be evidence of potential fraud in EAR's leasing activity.

Upon this discovery, EAR's officers and directors resigned on October 8, 2009. With the resignation of the former officers and directors, Player too lost any power to influence or control EAR's operations. Plaintiff was then elected as sole member of the board of directors and as the Chief Restructuring Officer, vested with power to assume full control of EAR's operations and all the powers and duties of the President, Chief Executive, and Treasurer of EAR. Pursuant to these powers, Plaintiff filed, on October 23, 2009, EAR's voluntary Chapter 11 petition.

On July 15, 2010, the court confirmed EAR's Second Amended Plan of Liquidation (the "Plan"), and William Brandt, Jr. was appointed as the Plan Administrator (the "Plan Administrator"), with the authority to pursue "Litigation Claims," as defined in the Plan. Plaintiff seeks to bring the claims alleged in the Complaint pursuant to that authority.

## PLAINTIFF'S TRANSACTIONS WITH DEFENDANTS

According to Plaintiff, on or about December 24, 2007, ICON EAR, LLC entered into a master lease agreement with EAR related to certain equipment (the "Equipment Lease"). Four schedules, which identified specific machinery to be leased, were entered into by the parties between December 2007 and June 2008. Subsequently, ICON EAR, LLC assigned the rights to the leasing of the equipment contained in the second schedule to ICON EAR II, LLC. Under the terms of the Equipment Lease, EAR was required to make monthly payments to Defendants with respect to the equipment identified in the schedules in connection with the Equipment Lease.

Plaintiff alleges that Player caused EAR to enter into the Equipment Lease because doing so furthered his fraudulent scheme. The transactions with Defendants are the type of leasing arrangements that Player used to perpetuate his scheme. As a result of the scheme, EAR creditors that had financing agreements and leases which were part of Player's scheme have been unable to identify what, if any, equipment that was previously located at EAR's facilities was subject to a valid security agreement or lease. Plaintiff contends that because the transfers made to Defendants were part of Player's fraudulent scheme, the transfers that EAR made to Defendants in satisfaction of the obligations under the Equipment Lease were made with the actual intent to hinder, delay, and defraud EAR's remaining creditors.

Plaintiff claims that Defendants discovered red flags that put them on notice of the issues occurring at EAR and of Player's scheme. Specifically, Plaintiff alleges that on January 3, 2008, Defendants received two articles from a third party that discussed Player's criminal past and the potential double leasing issues at EAR. Days after receiving the articles, Defendants requested additional collateral from Player in the form of real estate and thereafter received a security interest in several pieces of property located in Wyoming (the "Wyoming Properties"). At least some of the Wyoming Properties which were subject to Defendants' security interest were purchased with EAR's funds, but EAR did not receive anything in exchange for making these transfers. Since the commencement of Debtor's bankruptcy case, Defendants have foreclosed on their liens against the Wyoming Properties and, as the only bidder at the foreclosure sales, now holds title to the Wyoming Properties.

Within two years preceding the filing of the chapter 11 petition, and specifically from January 2008 through August 2009, EAR made transfers to Defendants in accordance with the requirements of the Equipment Lease, totaling $6,914,437.71. Plaintiff seeks the avoidance of those allegedly fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) and the recovery of same for the benefit of the estate under 11 U.S.C. § 550.

Within four years preceding the bankruptcy filing, on or around October 10, 2007, EAR made an additional transfer to Defendants of $ 25,000.00 in accordance with the requirements of the Equipment Lease. Plaintiff seeks the avoidance of that allegedly fraudulent transfer under 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5(a)(1) and the recovery of same for the benefit of the estate under 11 U.S.C. § 550.

Plaintiff also alleges that 90 days immediately preceding the filing of the bankruptcy case, on August 6, 2009, EAR transferred to Defendants the sum of $ 25,000.00 (the "Preferential Transfers"). The Preferential Transfers were made on account of antecedent debt owed by EAR, while EAR was insolvent, and enabled Defendants to receive more than they would have received if this case were a case under Chapter 7 of the Bankruptcy Code.

As an alternative to the relief requested pursuant to 11 U.S.C. § 548 and 740 ILCS 160/5, Plaintiff seeks the avoidance of the Preferential Transfers under 11 U.S.C. § 547 and the recovery of same for the benefit of the estate under 11 U.S.C. § 550. To the extent Plaintiff's claims under 11 U.S.C. § 548, 740 ILCS 165, and 11 U.S.C. § 547 are avoidable, Plaintiff seeks the disallowance of Defendants' claims against the Debtor pursuant to 11 U.S.C. § 502(d). Finally, and most germane to the Defendants' Motion To Dismiss, Plaintiff seeks the court to impose a constructive trust and to compel Defendants to deliver the Wyoming Properties and/or the proceeds from any related sales to Plaintiff pursuant to Illinois law and/or 11 U.S.C. § 542.

DISCUSSION

1. Constructive Trust

Defendants argue that Count VI should be dismissed because the Plaintiff seeks the imposition of a constructive trust, a remedy, without sufficiently asserting a cause of action that gives right to the remedy.

The process by which a constructive trust is imposed is important in the analysis of whether the Complaint alleges a remedy without asserting a right. The causes of action that generally give rise to the imposition of a constructive trust are related to fraud and breach of fiduciary duty. Illinois law allows the imposition of a constructive trust as remedy if one party can prove that a second party holds property that the second property acquired through (i) actual fraud, (ii) abuse of a fiduciary relationship, or (iii) duress, coercion, or mistake." *Aetna Bank v. Dvorak*, 176 B.R. 160, 166 (N.D. Ill. 1994).

Once a court finds that such a transfer occurred, the court may deem the possessor of the property to be a trustee of that property whose sole duty is to deliver title and possession of the property back to the rightful owner. *People ex rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 502 (1986). Thus, constructive trust is an equitable remedy to prevent depriving the rightful owner of its property and to prevent unjust enrichment to the possessor. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 78 (1994).

Counts I and II of the Complaint allege that the transfers were made as part of a fraudulent leasing scheme. Out of such actions the equitable remedy of a constructive trust may therefore arise. The Complaint clearly provides elements of the scheme: that there was an abuse of a fiduciary duty by Player, that Player transferred interest in the Wyoming Properties via the abuse of that fiduciary duty, and that ICON gained possession of the Wyoming Properties as a result of the transferred interest in the Wyoming Properties. As such, the Complaint provides a theory out of which a constructive trust may arise under Illinois law. The imposition of a constructive trust would establish ICON as the trustee of the Wyoming Properties who must turn over the Wyoming Properties to the Debtor.

The court concludes, therefore, that Count VI of the Complaint does clearly state a claim. Accordingly, dismissal on that basis is not warranted.

2. The *In Pari Delicto* Defense

Defendants further contend that the Count VI should be dismissed based on the equitable defense of *in pari delicto*. The *in pari delicto* doctrine is based on "the idea that, when the plaintiff is as culpable as the defendant, if not more so, the law will let the losses rest where they fell." *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 596 (7th Cir. 2012).

While courts generally do not recognize state law equitable defenses such as *in pari delicto* to preference actions brought by a trustee under section 547 or fraudulent transfer actions under section 548, *In re Automotive Professionals, Inc.*, 398 B.R. 256, 262 (Bankr. N.D. Ill. 2008), the *in pari delicto* defense can be asserted against any claim that constitutes property of the estate under section 541, to the same extent that it could have been asserted against the debtor outside of bankruptcy. As explained in *In re Ostrom-Martin, Inc.*, 188 B.R. 245 (Bankr. C.D. Ill. 1995):

> Section 323(b) of the Bankruptcy Code gives the trustee the right to prosecute causes of action belonging to the estate. ... Such actions fall into two categories: those brought by the trustee as successor to the debtor's interest in the estate; and those brought under the trustee's avoiding powers. ... Under the first group, the trustee stands in the shoes of the debtor and may only institute whatever actions

5

> the debtor could have brought itself and is subject to the same defenses as could have been asserted by the defendant had the action been brought by the debtor. ... It is only when the trustee is exercising his avoiding powers that he accedes to a superior status and possesses extraordinary rights.

*Id.* at 251 (citations omitted).

The Seventh Circuit made a similar observation in *Peterson*, which involved an action brought by the chapter 7 trustee of bankrupt mutual funds against the funds' auditors, *i.e.* an action that could have been brought by the debtor outside of bankruptcy and which constituted property of the estate under section 541. The Court stated:

> [The] Trustee ... stepped into the shoes of the Funds under ... § 541(a) to collect property of the estate—here, the estate's chose in action against its auditor. The Trustee's claims are subject to the same defenses that [defendant] could have asserted had the Funds themselves filed suit. (Which is to say, this is not an avoiding action to recoup any transfer from the Funds to [defendant], an action in which a bankruptcy trustee can take the part of any hypothetical lien claimant, see 11 U.S.C. § 544 ... .)

*Peterson*, 676 F.3d at 596.

Here, the Plan Administrator brings a claim for imposition of a constructive trust. Such a claim constitutes property of the estate under section 541, and the Plan Administrator, in asserting it, steps into the shoes of the Debtor in every respect. He is subject to the same defenses that could have been asserted by the defendant had the action been brought by the Debtor. *See In re Edgewater Med. Ctr.*, 332 B.R. 166, 177 (Bankr. N.D. Ill. 2005).

Illinois applies the doctrine of *in pari delicto* to claims for the imposition of constructive trusts. *See Klein v. Chicago Title & Trust Co.*, 295 Ill. App. 208, 221 (1938) (noting that "a court will not aid one party to an unlawful transaction to compel another party thereto to account for moneys or profits alleged to have arisen out of such transaction").

While the *in pari delicto* doctrine may therefore be available in the context of a claim for constructive trust, there are no allegations in Count VI of the Complaint that EAR was a *participant* in the alleged fraud, only that such a fraud existed. Plaintiff alleges that the fraud was perpetrated by Player, and there is no allegation that Player was an officer, director, or otherwise an agent of EAR.

Plaintiff does allege in other counts of the Complaint that transfers were made by EAR with the actual intent to defraud creditors. Again, however, there are no such allegations in Count VI, which asserts the constructive trust claim.

The court is aware that these appear to be conflicting assetions, and that it may well be impossible for both allegations to be true. As noted by the Seventh Circuit in *Peterson*, however, "there's no rule against inconsistent pleadings in different suits, *or for that matter a single suit*," and "[a]

party may state as many separate claims ... as it has, regardless of consistency." *Peterson*, 676 F.3d at 597 (citing Fed.R.Civ.P. 8(d)(3) (emphasis added)).

Inasmuch as Count VI does not allege that EAR was a participant in the fraud, the *in pari delicto* defense is, therefore, not established on the face of the Complaint. Accordingly, dismissal on that basis is not warranted.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion To Dismiss is not well taken, and will be denied.

A separate order will be issued, concurrent with this Memorandum Decision, denying the Motion To Dismiss.

Dated: September 30, 2012

ENTER:

_____
Timothy A. Barnes
United States Bankruptcy Judge